**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kerry L. NACOTEE, Defendant– Appellant.**

No. 98–2108.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 2, 1998.

Decided Oct. 30, 1998.

Thomas P. Schneider, Daniel H. Sanders (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Lew A. Wasserman (argued), Jean M. Kies, Kies & Wasserman, Milwaukee, WI, for Defendant–Appellant.

Before POSNER, Chief Judge, and CUMMINGS and EVANS, Circuit Judges.

CUMMINGS, Circuit Judge.

Kerry Nacotee was convicted of serious bodily assault in violation of 18 U.S.C. §§ 113(a)(6) and 1153 and sentenced to 37 months' imprisonment and three years of supervised release. At the close of evidence, the district court introduced an aiding and abetting instruction, allowing the jury to find Nacotee guilty either if she had formulated the general intent to commit the assault or if she had the specific intent to aid and abet her friend, Leroy Sanapaw, in his commission of an assault. Nacotee requested that the jury be specifically instructed that voluntary intoxication is a defense to aiding and abetting liability. The district court refused and the jury found Nacotee guilty in a general verdict. On appeal, Nacotee challenges the district court's failure to provide a voluntary intoxication instruction. Since we agree with the district court that on the facts of this case no such instruction was required, we affirm.

## Background

On the evening of June 27, 1997, Ella Bruette, Kristen LaTender and Kathy La-Tender went to a party at Jerome Sanapaw's trailer on the Menominee Indian Reservation in Wisconsin. At the party, Kathy LaTender got into an argument with Shawn Sanapaw which escalated into a fight. LaTender and

Bruette went to the tribal police early in the morning on June 28 to file charges against Shawn Sanapaw for simple assault. The tribal police promptly arrested Shawn that morning in the presence of one of his brothers, Leroy Sanapaw.

Despite the previous evening's events, the LaTenders and Bruette returned to Jerome Sanapaw's trailer early the next morning to continue drinking. Bruette shortly went to sleep on Jerome's couch, apparently passed out from the effects of alcohol. T.J. Sanapaw (a third brother of Shawn and Leroy), seeing that the LaTenders and Bruette had returned, went looking for Leroy Sanapaw. T.J. knew Leroy was upset because somebody had reported their brother Shawn to the tribal police.

T.J. found Leroy along with his friend, Kerry Nacotee, the defendant-appellant in this case, drinking beer at a picnic table. T.J. told them he had seen the LaTenders and Bruette at Jerome Sanapaw's trailer. T.J., Leroy, and Nacotee immediately ran towards Jerome's trailer. Nacotee was the first to enter the trailer. She went to where Bruette was sleeping and began punching her in the face. Gaynelle Peters, a bystander, tried to pull Nacotee away, but Nacotee resisted her entreaties. Nacotee then turned on Peters. Nacotee pinned Peters down and began pulling her hair and punching her. In the meantime, Leroy had entered the trailer. Bruette was still passed out, lying where Nacotee had left her when Nacotee began to attack Peters. Finding Bruette defenseless and Peters occupied with Nacotee, Leroy went over to Bruette and kicked her repeatedly in the face and body.

Bruette suffered severe injuries as a result of the assault. She sustained a concussion, multiple bruises, and a fractured left cheek bone. Her eyes remained swollen for several weeks after the assault and to this day she continues to experience blurred vision in her left eye. Peters suffered less severe injuries.

The tribal police arrested Nacotee later the same day and Leroy Sanapaw two days later. They were subsequently indicted under 18 U.S.C. §§ 113(a)(6) and 1153 for the assault against Bruette. In this appeal, we are concerned only with Nacotee's trial and conviction.

## Analysis

At the close of evidence in Nacotee's trial, the district court introduced an aiding and abetting instruction, allowing the jury either to find Nacotee guilty if they found she had directly assaulted Bruette or if her conduct in holding down and hitting Peters aided and abetted Leroy Sanapaw's assault against Bruette. The effect of the aiding and abetting instruction was to introduce the element of specific intent into the jury's inquiry.

18 U.S.C. § 113 ("Assaults within Maritime and Territorial Jurisdiction") carefully distinguishes between those assaults which carry an intent element and those which do not. *See United States v. Perez*, 43 F.3d 1131, 1137 (7th Cir.1994). Subsections (a), (b), and (c), respectively, prohibit "[a]ssault with intent to commit murder," "[a]ssault with intent to commit any felony, except murder or a felony under chapter 109A," and "[a]ssault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse." By the terms of the statute, each of these crimes contains an intent element. By contrast, subsections (d), (e), and (f), prohibiting "[a]ssault by striking, beating, or wounding," "[s]imple assault," and "[a]ssault resulting in serious bodily injury," contain no such intent requirement. Ordinarily then, to prove liability for an assault resulting in serious bodily injury under 18 U.S.C. § 113(f), the prosecution need not show that a defendant intended to assault the victim. It must show only that a defendant did in fact commit the assault.

The introduction of the aiding and abetting instruction by the district court injected an element of specific intent into the general intent crime of assault. Although the jury could still find Nacotee guilty under the theory that she directly assaulted Bruette, a theory under which her specific intent would be irrelevant, with the introduction of the aiding and abetting instruction, the jury could also find Nacotee guilty under the theory that her holding down and hitting Peters helped Leroy Sanapaw in his assault on Bruette. Under the latter theory, the jury would find Nacotee had aided and abet-

ted Leroy Sanapaw in his assault against Bruette. To be liable under an aiding and abetting theory for the crime itself, however, a defendant must have had the specific intent to aid in the commission of the crime in doing whatever she did to facilitate its commission. *United States v. Boyles*, 57 F.3d 535, 541 (7th Cir.1995); *United States v. Barclay*, 560 F.2d 812, 816 (7th Cir.1977).

■ Nacotee argued she was too drunk at the time of the assault to form the intent necessary to sustain an aiding and abetting theory. This voluntary intoxication, Nacotee contended, rendered her incapable of intending to help Leroy Sanapaw assault Bruette. Nacotee asked that the jury receive a specific instruction that her voluntary intoxication, if proven, could negate her capacity to form the specific intent to aid and abet Leroy Sanapaw. The judge refused to give this instruction, holding that Nacotee had failed to produce enough evidence at trial to show she was sufficiently incapacitated by drink to warrant such an instruction. On appeal, Nacotee raises a single issue, that the district court erred in refusing to instruct the jury on voluntary intoxication.

■ A defendant is entitled to a particular theory of defense instruction if four things are true: (1) the proposed instruction is a correct statement of the law; (2) the defendant's theory of defense is supported by the evidence; (3) the defendant's theory is not a part of the government's charge; and (4) the failure to include an instruction on the theory of defense would deny the defendant a fair trial. *United States v. Brown*, 136 F.3d 1176, 1184 (7th Cir.1998); *United States v. Casanova*, 970 F.2d 371, 374 (7th Cir.1992). We review a district court's rejection of a proposed theory of defense instruction de novo. *United States v. Turner*, 93 F.3d 276, 285 (7th Cir.1996).

Both sides agree that Nacotee's proffered instruction was a correct statement of the law. As noted above, aiding and abetting an assault causing serious bodily harm is a specific intent crime. Nacotee's voluntary intoxication, if sufficient to negate the required intent to aid and abet, would provide her with a defense. *United States v. Reed*, 991 F.2d 399, 400 (7th Cir.1993).

■ The disagreement centers around whether Nacotee produced sufficient evidence at trial to support her theory of defense. A defendant seeking a voluntary intoxication instruction must support this request with sufficient evidence upon which a reasonable jury could conclude either (1) that the defendant's "mental faculties were so overcome by intoxicants that he was incapable of forming the intent requisite to the commission of the crime," or (2) that "the intoxication was so extreme as to suspend entirely the power of reason." *Boyles*, 57 F.3d at 542 (internal citations omitted). A simple "bald statement that the defendant had been drinking or was drunk" is insufficient to justify a voluntary intoxication instruction. *Id.*, at 542. To warrant a voluntary intoxication instruction, a defendant must produce some evidence she was drunk enough to completely lack the capacity to form the requisite intent. If she fails to produce such evidence, no instruction is warranted.

Nacotee relies on the testimony of FBI Agent Raymond Greco. Greco arrested Nacotee on August 20, 1997, a little less than two months after the assault on Bruette, and took a statement from her at that time. At trial, Greco paraphrased Nacotee's statement. In the statement, Nacotee indicated she had been drinking and "not thinking right" the night and morning of the incidents two months earlier. Nacotee acknowledged she had hated Bruette for some time and that Nacotee's mother had fought with Bruette in the past, but, according to Greco, Nacotee remembered fighting only with Peters and not with Bruette.

It is unclear how Greco's testimony is supposed to help Nacotee. Nacotee spoke to Greco two months after the incident in question and in circumstances where she had every reason to make self-serving statements. The statement she was "not thinking right" can hardly be considered evidence of a mental impairment. The fact that Nacotee remembered hitting Peters and did not remember hitting Bruette at best indicates Nacotee was drunk. Nothing in Nacotee's statement as reported by Agent Greco re-

veals anything about Nacotee's capacity to form the requisite intent.

Nacotee also points to the testimony of T.J. Sanapaw to support her claim. As noted above, T.J. Sanapaw saw Nacotee shortly before she ran to Jerome Sanapaw's trailer. T.J. was thus in a position to observe Nacotee's level of inebriation, to which he testified at trial. Since the relevant testimony is relatively short, we reproduce it in full:

Q: Did [Nacotee] appear to be intoxicated at that point in time?

T.J.: Yes.

Q: Did she appear to be in control of herself?

T.J.: No, no, I wouldn't say, no.

Q: In your opinion did she know what she was doing at that point in time?

T.J.: No, it didn't look like so to me.

The question then is whether the above testimony supplies sufficient evidence to warrant a voluntary intoxication instruction. Nacotee argues the last two lines of T.J. Sanapaw's testimony indicate it was impossible for her to formulate the specific intent of aiding and abetting the assault on Bruette. T.J. Sanapaw testified, however, only that Nacotee did not "know what she was doing" shortly before the assault. This highly general proposition is too thin a base upon which to argue for a voluntary intoxication instruction, particularly coming as it does from a witness who had himself been drinking and using cocaine just prior to making the observations upon which Nacotee relies.

In addition, T.J. Sanapaw's testimony that Nacotee did not "know what she was doing" contradicts a great deal of evidence that Nacotee knew exactly what she was doing. Upon hearing that Bruette was at Jerome Sanapaw's trailer, Nacotee ran there and began immediately hitting Bruette. She stopped hitting Bruette only because Peters intervened. Nacotee then thanked Peters for her efforts by hitting her. On these facts, it is highly unlikely that Nacotee could have had the capacity to plan and execute an attack against Bruette and then suddenly have lacked the capacity to intend to aid and abet Leroy Sanapaw once he began hitting Bruette. This would suggest that her alcoholic impairment waxed and waned from moment to moment as it became more or less legally relevant.

The question in this case is not whether Nacotee did in fact intend to help Leroy by hitting Peters. Rather, the question is whether Nacotee produced sufficient evidence to indicate she lacked the capacity to formulate such a thought when she was hitting Peters. This she has manifestly failed to do. The district court was correct in concluding that no voluntary intoxication instruction was warranted. Accordingly, the judgment and sentence of the district court are AFFIRMED.