# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————————

No. 09-1612

———————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Galen G. Robertson, | * | |
| | * | |
| Appellant. | * | |

———————————

Submitted: February 8, 2010
Filed: June 7, 2010

———————————

Before LOKEN, Chief Judge,[1] COLLOTON and GRUENDER, Circuit Judges.

———————————

GRUENDER, Circuit Judge.

A jury convicted Galen G. Robertson of attempted aggravated sexual abuse (Count I) and attempted abusive sexual contact (Count II) in Indian country, in violation of 18 U.S.C. §§ 2241(a)(1), 2244(a)(1) and 1153. Robertson argues that the district court abused its discretion in granting the Government a continuance on the eve of trial, plainly erred in admitting hearsay evidence, improperly instructed the jury, and erred in denying his motion for judgment of acquittal. He also argues that

———————————

[1]The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

his being convicted of both offenses violates the Double Jeopardy Clause of the Fifth Amendment. We affirm Robertson's conviction on Count I, reverse Robertson's conviction on Count II, and remand to the district court with instructions to vacate Robertson's conviction and sentence on Count II.

## I.  BACKGROUND

Robertson is an enrolled member of the Spirit Lake Sioux Tribe. On the morning of September 16, 2007, Robertson, then thirty years old, was driving a pickup truck with his friend, Grant Cavanaugh, on the Spirit Lake Reservation in North Dakota. Robertson saw a seventeen-year-old girl, F.S., walking along the side of the road toward the nearby community of Fort Totten. Robertson, a friend of F.S.'s mother, stopped the truck to offer F.S. a ride. F.S. had been drinking alcohol at various parties throughout the night and early morning and was on her way home. She accepted the ride, gave Robertson $20 for gas, and asked to be taken home. Instead of driving F.S. directly home, Robertson stopped to buy beer and then drove to a ranch owned by Duane Smith. At the ranch, F.S. stayed in the truck while Robertson and Cavanaugh worked in a nearby field for about an hour. Robertson, Cavanaugh, and F.S. then drove to another location on Smith's ranch where they entered a bus that had been converted into a camper. Inside the bus, the three drank beer and talked. F.S. did not object to stopping at the ranch or getting on the bus.

After a couple of hours, Cavanaugh exited the bus, leaving Robertson and F.S. alone. Robertson took F.S. to the back of the bus, where there was a makeshift bed. F.S. testified at trial that she went to the back of the bus willingly but that she turned around to return to the front of the bus when she saw the bed. When F.S. turned around, she saw that Robertson was standing directly in front of her, so she backed away from him and sat on the bed. Robertson sat down next to F.S. and reached for her belt. F.S. tried to push his hand away, and a struggle ensued. After forcibly removing F.S.'s belt, Robertson pulled F.S.'s pants and underwear down below her

knees while she kicked, screamed, and repeatedly told him to stop. Ignoring her protests, Robertson got on top of F.S., who was now lying on her back, and began pushing against her with his body. Throughout the encounter, F.S. was "screaming and crying" and "telling him to stop." Robertson stopped and backed away only after F.S. told Robertson that her dad was going to kill him.

Cavanaugh returned to the bus a few minutes later. F.S. testified at trial that she did not mention the assault to Cavanaugh because she felt embarrassed and ashamed. The group eventually got in Robertson's pickup truck and began to drive away. In a nearby pasture, they came upon Smith and Tribal Judge William Cavanaugh in another truck. Robertson stopped the truck and began talking to Smith and Judge Cavanaugh. During the ensuing ten-minute conversation, F.S. could not see the occupants of the other truck, but she testified that she was upset and scared and that she began yelling loudly that she wanted to go home. After driving away, Robertson dropped Grant Cavanaugh off and then took F.S. to her mother's house.

Robertson followed F.S. inside, where her mother, Rayone, was waiting. F.S. was crying hysterically when she walked in the door. She told her mother, "He done something to me," and then looked at Robertson and demanded, "Tell her what you did to me." Robertson repeatedly denied any wrongdoing and then said to F.S., "I'm your friend." F.S. retreated to her mother's bedroom, where she continued crying until she fell asleep. Meanwhile, Robertson spoke with Rayone in the kitchen. During their conversation, Robertson put his head in his hands and said, "I could get into a lot of trouble for this, right?" Robertson told Rayone that he had kissed F.S., and he asked Rayone not to tell his wife.[2] Rayone testified that Robertson stayed for about an hour and a half and that he was very nervous during their conversation.

---

[2]Robertson was not married at the time but lived with a woman whom he apparently referred to as his wife.

After Robertson left, Rayone went to her bedroom to speak with F.S. She saw that F.S.'s pants had been ripped and asked what had happened. According to Rayone, F.S. responded, "He raped me." After speaking with F.S., Rayone sought the advice of her brother, Lavern Littlewind, a Bureau of Indian Affairs ("BIA") police officer. Rayone found Littlewind, who was off-duty that evening, told him about the situation, and drove him back to her house. Littlewind called the police, and BIA Officer Leo Belgarde arrived to investigate. Officer Belgarde, Littlewind, and Rayone asked F.S. to explain what had happened. Rayone excused herself from the conversation to get some fresh air. When she stepped outside, Robertson called out to her from a neighbor's yard. Rayone approached Robertson, who asked her why the police were involved. Robertson then suggested that Rayone bring F.S. outside so that they could "go for a drive" and "work something out." Rayone refused and returned to her house.

Officer Belgarde decided to take F.S. to the hospital to be examined. When F.S. learned that Robertson was outside, however, she became frightened and refused to leave the house. She eventually agreed to go to the hospital after Officer Belgarde assured her that she would be safe. Once Officer Belgarde drove away with F.S., Robertson approached Littlewind and told him that F.S. had "come on to him" and that she had told him she was eighteen. Robertson called Littlewind three times in the next twenty-four hours to inquire about the investigation.

At the hospital, F.S. complained of soreness in her vaginal area and was examined for evidence of rape. A nurse who helped examine F.S. testified that she saw no visible injuries on F.S.'s body, but she acknowledged that some injuries, such as bruising, are not immediately visible to the naked eye. Photographs of F.S. taken a few days later at the police station showed bruises and scratches on her inner thighs. An FBI laboratory analysis of the evidence collected during F.S.'s examination revealed the presence of semen containing Robertson's DNA on F.S.'s underwear.

A federal grand jury returned an indictment charging Robertson with attempted aggravated sexual abuse, in violation of 18 U.S.C. §§ 2241(a)(1) and 1153 (Count I), and attempted abusive sexual contact, in violation of 18 U.S.C. §§ 2244(a)(1) and 1153 (Count II). A jury found Robertson guilty on both counts, and the district court sentenced him to 144 months' imprisonment on Count I, a concurrent term of 120 months' imprisonment on Count II, concurrent five-year terms of supervised release, and a $100 special assessment on each count. Robertson appeals.

## II.    DISCUSSION

Robertson first argues that abusive sexual contact (Count II) is a lesser-included offense of aggravated sexual abuse (Count I) and that his being convicted on both Counts I and II therefore violates the Fifth Amendment's prohibition against double jeopardy. Robertson failed to raise this issue at trial. There is a conflict in our circuit over whether a defendant may raise a double jeopardy claim for the first time on appeal. *See United States v. Plenty Chief*, 561 F.3d 846, 851 n.3 (8th Cir. 2009) (recognizing the conflict); *United States v. Two Elk*, 536 F.3d 890, 897 (8th Cir. 2008) (same). We have held in some cases that double jeopardy claims raised for the first time on appeal are waived, *see, e.g.*, *United States v. Bentley*, 82 F.3d 222, 223 (8th Cir. 1996), but in other cases we have reviewed double jeopardy claims raised for the first time on appeal for plain error, *see, e.g.*, *United States v. Sickinger*, 179 F.3d 1091, 1092-93 (8th Cir. 1999).

"When we are confronted with conflicting circuit precedent, the better practice normally is to follow the earliest opinion, as it should have controlled the subsequent panels that created the conflict." *T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 960 (8th Cir. 2006). Our refusal to review double jeopardy claims raised for the first time on appeal has the longer history in our precedents. *See, e.g.*, *United States v. Conley*, 503 F.2d 520, 521 (8th Cir. 1974) (refusing to consider a double jeopardy claim raised for the first time on appeal and observing that "immunity from double

jeopardy is a personal right which if not affirmatively pleaded by the defendant at the time of trial will be regarded as waived" (quoting *Ferina v. United States*, 340 F.2d 837, 838 (8th Cir. 1965))).  But the Supreme Court's intervening decision in *United States v. Olano*, 507 U.S. 725 (1993), "arguably justified the [subsequent] departure" from that line of cases, *see Ingram*, 443 F.3d at 960 ("[I]t is well settled that a panel may depart from circuit precedent based on an intervening opinion of the Supreme Court that undermines the prior precedent.").  In *Olano*, the Supreme Court clarified the difference between waiver and forfeiture, 507 U.S. at 733-34, defining forfeiture as "the failure to make the timely assertion of a right," *id.* at 733, and waiver as "the intentional relinquishment or abandonment of a known right," *id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  The Court then held that Federal Rule of Criminal Procedure 52(b) allows appellate courts to review forfeited claims for plain error.  *Id.* at 732-35.  Because there is no evidence in this case that Robertson intentionally relinquished his double jeopardy claim, *see Olano*, 507 U.S. at 733, we will review his claim for plain error.[3]

To establish plain error, Robertson must demonstrate that (1) there is "an error or defect . . . that has not been intentionally relinquished or abandoned"; (2) the error is "clear or obvious, rather than subject to reasonable dispute"; and (3) the error "affected [his] substantial rights, which in the ordinary case means . . . that it 'affected

---

[3]After *Olano*, our sister circuits have reviewed double jeopardy claims not raised in the district court for plain error.  *See United States v. Polouizzi*, 564 F.3d 142, 153-54 (2d Cir. 2009); *United States v. Kelly*, 552 F.3d 824, 829 (D.C. Cir. 2009); *United States v. Henry*, 519 F.3d 68, 71 (1st Cir.), *cert. denied*, 555 U.S. ---, 129 S. Ct. 423 (2008); *United States v. Lewis*, 492 F.3d 1219, 1221-22 (11th Cir. 2007) (en banc); *United States v. Jackson*, 443 F.3d 293, 301 (3d Cir. 2006); *United States v. Hernandez-Guardado*, 228 F.3d 1017, 1028-29 (9th Cir. 2000); *United States v. Lankford*, 196 F.3d 563, 577 (5th Cir. 1999); *United States v. Contreras*, 108 F.3d 1255, 1261 (10th Cir. 1997); *United States v. Branham*, 97 F.3d 835, 842 (6th Cir. 1996); *United States v. Penny*, 60 F.3d 1257, 1261 (7th Cir. 1995); *United States v. Jarvis*, 7 F.3d 404, 409-10 (4th Cir. 1993).

the outcome of the district court proceedings.'" *Puckett v. United States*, 556 U.S. ---, 129 S. Ct. 1423, 1429 (2009) (alteration in original) (quoting *Olano*, 507 U.S. at 732-34). "[I]f the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (second alteration in original) (quoting *Olano*, 507 U.S. at 736).

We first examine whether the district court erred in failing to recognize that convicting Robertson on Counts I and II violated the Double Jeopardy Clause. The double jeopardy bar applies "where the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test." *United States v. Dixon*, 509 U.S. 688, 696 (1993). "The same-elements test, sometimes referred to as the '*Blockburger*'[4] test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Id.* Robertson argues that abusive sexual contact is a lesser-included offense of aggravated sexual abuse because every element of abusive sexual contact is also an element of aggravated sexual abuse. *See Brown v. Ohio*, 432 U.S. 161, 168 (1977) (stating that a "lesser included offense . . . requires no proof beyond that which is required for conviction of the greater" and that "[t]he greater offense is therefore by definition the 'same' for purposes of double jeopardy as any lesser offense included in it").

A person commits aggravated sexual abuse if he "knowingly causes another person to engage in a sexual act—by using force against that other person." 18 U.S.C. § 2241(a)(1). A "sexual act" is defined to include "contact between the penis and the vulva," which is deemed to occur "upon penetration, however . . . slight." 18 U.S.C. § 2246(2)(A). A person commits abusive sexual contact if he "knowingly engages in or causes sexual contact with or by another person, if so to do would

---

[4]*Blockburger v. United States*, 284 U.S. 299 (1932).

violate—subsection (a) or (b) of section 2241 of this title had the sexual contact been a sexual act."  18 U.S.C. § 2244(a)(1).  "Sexual contact" is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  18 U.S.C. § 2246(3). We have held that "abusive sexual contact is a lesser-included offense of aggravated sexual abuse."  *United States v. No Neck*, 472 F.3d 1048, 1054 (8th Cir. 2007) (quoting *United States v. Two Bulls*, 940 F.2d 380, 381 (8th Cir. 1991) (per curiam)). Indeed, "it is obvious that any sexual act will necessarily involve sexual contact." *Two Bulls*, 940 F.2d at 381.

Our analysis does not end there, however, for "while abusive sexual contact may be a lesser included offense when a single criminal event is involved, aggravated sexual abuse is a different crime, and each may be violated during a series of distinct criminal acts."  *See United States v. Bercier*, 506 F.3d 625, 633-34 (8th Cir. 2007). In *Bercier*, the defendant was convicted of abusive sexual contact and aggravated sexual abuse for first touching and kissing the victim's breasts and then forcibly performing oral sex on her.  *Id.* at 628-29.  We found no double jeopardy violation because "there was sufficient evidence that Bercier committed two distinct sex offenses during the assault."  *Id.* at 634.  Similarly, in *United States v. Plenty Chief*, 561 F.3d 846 (8th Cir. 2009), the defendant challenged his convictions for attempting to engage in a sexual act with a minor in violation of 18 U.S.C. § 2243(a), and abusive sexual contact, in violation of 18 U.S.C. § 2244(a)(3), on double jeopardy grounds, *Plenty Chief*, 561 F.3d at 852-53.  We upheld both convictions because we concluded that the defendant's rubbing the victim's chest and thighs constituted abusive sexual contact and that his forcibly attempting to penetrate the victim's vagina with his finger constituted a distinct attempted sexual act.  *Id.* at 853-55.

In this case, we must determine whether Robertson's actions constituted distinct attempts to cause sexual contact with F.S. by force and to engage in a sexual act with

F.S. by force. Robertson clearly attempted to forcibly penetrate F.S.'s vulva, but the trial record contains no evidence that he attempted to touch her breasts or otherwise cause sexual contact apart from his attempt to engage in a single sexual act with her by force. On these facts, we are compelled to conclude that the district court erred in failing to recognize a double jeopardy violation. In light of our holdings in *No Neck* and *Two Bulls*, we further conclude that this error was "clear and obvious" under current law, *see Sickinger*, 179 F.3d at 1093. Robertson has thus satisfied the first two prongs of the plain error test.

To obtain relief on plain error review, Robertson also bears the burden of showing that he was prejudiced by the double jeopardy violation. *United States v. Abdullahi*, 520 F.3d 890, 896 (8th Cir. 2008) ("To show that he is entitled to plain error relief, [the defendant] bears the burden of showing prejudice—that is, he must show a reasonable probability that the outcome would have been different absent the alleged error." (alteration in original) (internal quotation marks omitted) (quoting *United States v. Smith*, 508 F.3d 861, 865 (8th Cir. 2007))). Robertson correctly notes that his sentences are not entirely concurrent because each conviction carries a mandatory special assessment. *See Ray v. United States*, 481 U.S. 736, 737 (1987) (per curiam) (concluding that "petitioner is not in fact serving concurrent sentences" because he was ordered to pay multiple special assessments). In light of the double jeopardy violation, the additional $100 special assessment subjects Robertson to multiple punishments for the same offense. *See United States v. Christner*, 66 F.3d 922, 927 (8th Cir. 1995) (concluding that multiple statutory special assessments constituted "multiple punishments, within the meaning of the double jeopardy clause" (citing *United States v. Grubbs*, 829 F.2d 18, 19 (8th Cir. 1987) (per curiam))). We conclude that this additional punishment prejudiced Robertson. *See United States v. Jones*, 403 F.3d 604, 607 (8th Cir. 2005) ("[T]he $100 statutory special assessment that [the defendant] received for his second conviction is a collateral consequence of his conviction that constitutes actual prejudice."); *see also Ball v. United States*, 470

U.S. 856, 865 (1985) ("The separate *conviction*, apart from [a purportedly] concurrent sentence, has potential adverse collateral consequences that may not be ignored.").

"Failing to remedy [such] a clear violation of a core constitutional principle would be error 'so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of [the] judicial proceedings and result in a miscarriage of justice.'" *United States v. Ogba*, 526 F.3d 214, 238 (5th Cir. 2008) (first alteration in original) (quoting *United States v. Fortenberry*, 914 F.2d 671, 673 (5th Cir. 1990)) (reversing a conviction on plain error review after finding a double jeopardy violation in part because the defendant was subjected to multiple special assessments). Accordingly, we conclude that the double jeopardy violation is a plain error, warranting reversal of Robertson's conviction and sentence on Count II. *See Rutledge v. United States*, 517 U.S. 292, 302-03 (1996) (vacating a second conviction because the $50 assessment on the second count "amounts to cumulative punishment not authorized by Congress"); *Ball*, 470 U.S. at 865 ("[T]he second conviction, even if it results in no greater sentence, is an impermissible punishment."); *United States v. Tann*, 577 F.3d 533, 539-40 (3d Cir. 2009) ("Following *Ball* and *Rutledge*, numerous courts of appeals . . . have concluded that a defendant's substantial rights are affected by the additional, unauthorized conviction, even when the immediate practical effect may not increase the defendant's prison term, or may only be a negligible assessment."); *United States v. Parker*, 508 F.3d 434, 436, 440-41 (7th Cir. 2007) (reversing a conviction on plain error review where the defendant was subjected to "an additional $100 special assessment").[5]

---

[5]We reached the opposite conclusion in *United States v. Bailey*, 206 Fed. App'x 650 (8th Cir. 2006) (per curiam), holding that "[t]he special assessment, though an additional punishment, 'is not serious enough to be described as a miscarriage of justice and thus constitute plain error,'" *id.* at 652 (quoting *United States v. McCarter*, 406 F.3d 460, 464 (7th Cir. 2005)). We are not bound by *Bailey*, however, since unpublished opinions have no precedential value in our circuit. *See* 8th Cir. R. 32.1A; *United States v. Marston*, 517 F.3d 996, 1004 n.5 (8th Cir. 2008). In *Bailey*, we relied on *McCarter*, which the Seventh Circuit expressly overruled in *Parker*, 508 F.3d at

Robertson contends that vacating his conviction and sentence on Count II is an inadequate remedy and that we must remand for a new trial because the district court's failure to provide a lesser-included offense instruction sua sponte could have prejudiced him "by suggesting to [the jury] that [he] . . . committed not one but [two] crimes," *see United States v. Sue*, 586 F.2d 70, 71 (8th Cir. 1978) (per curiam) (second alteration in original) (quoting *United States v. Ketchum*, 320 F.2d 3, 8 (2d Cir. 1963)). We disagree. Instruction No. 2 charged the jury to "consider each count separately . . . and return a separate verdict for each count." On plain error review, Robertson's speculative assertion that the jury might have disregarded the court's instructions and convicted him based on the "psychological effect" of the multiplicitous indictment is insufficient to show a reasonable probability that the outcome would have been different but for the error. We have held that "[t]he 'principal danger that the multiplicity doctrine addresses' is the risk that a defendant might receive multiple punishments for a single offense." *United States v. Roy*, 408 F.3d 484, 492 (8th Cir. 2005) (quoting *United States v. Webber*, 255 F.3d 523, 527 (8th Cir. 2001)). Accordingly, we conclude that reversing Robertson's conviction on Count II and remanding to the district court with instructions to vacate his conviction and sentence on that count is an adequate remedy for the constitutional violation.

Robertson next argues that the district court erred in denying his motion for judgment of acquittal on Count I because the Government failed to prove that he had the intent to commit attempted aggravated sexual abuse. According to Robertson, the Government failed to establish that he attempted to engage in a sexual act with F.S.

436 (concluding that *McCarter* is "inconsistent with Supreme Court precedent and out of step with other circuits"). Because *Bailey* conflicts with *Rutledge* and *Ball*, we decline to follow it. *Cf. United States v. King*, 554 F.3d 177, 180 (1st Cir.) ("One might contend that even if the double conviction were plain error and prejudicial, the extent of prejudice—a nominal second conviction with concurrent sentence and a $100 assessment—does not meet the 'miscarriage of justice' requirement. Yet [*Rutledge* and *Ball*] reach the opposite result . . . ." (internal citation omitted)), *cert. denied*, 556 U.S. ---, 129 S. Ct. 2169 (2009).

by force because the evidence at trial merely tended to suggest that he attempted to have consensual sex with her.  "We review de novo the denial of a motion for judgment of acquittal, viewing the evidence in the light most favorable to the government and accepting all reasonable inferences supporting the jury's verdict . . . ." *United States v. Hilliard*, 490 F.3d 635, 640 (8th Cir. 2007) (internal citation omitted). "We reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt."  *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004) (quoting *United States v. Frank*, 354 F.3d 910, 916 (8th Cir. 2004)).

"An attempt requires '(1) an intent to engage in criminal conduct, and (2) conduct constituting a substantial step toward the commission of the substantive offense which strongly corroborates the actor's criminal intent.'"  *United States v. Wahlstrom*, 588 F.3d 538, 543 (8th Cir. 2009) (quoting *United States v. Lucas*, 499 F.3d 769, 781 (8th Cir. 2007) (en banc)).  Here, the Government presented evidence that Robertson forcibly removed the victim's belt, pulled down her pants and underwear, and repeatedly pushed against her on the bed, leaving semen on her underwear.  Throughout the encounter, F.S. struggled with Robertson and pleaded with him to stop.  When F.S. returned home, she was crying hysterically.  Rayone discovered that F.S.'s pants had been ripped, and bruises and scratches became visible on F.S.'s inner thighs over the next few days.  A laboratory analysis of F.S.'s underwear performed by the FBI revealed the presence of Robertson's semen.  Based on this evidence, a reasonable jury could easily find beyond a reasonable doubt that Robertson intended to penetrate F.S.'s vulva by force and that he took "unequivocal" steps "calculated to bring the desired result to fruition," *see United States v. Plenty Arrows*, 946 F.2d 62, 66 (8th Cir. 1991) (quoting *Fryer v. Nix*, 775 F.2d 979, 993 (8th Cir. 1985)).  In fact, "[i]t is difficult to understand what further act [the defendant] could have performed toward the goal of forced penetration, short of actual completion of the [substantive offense]." *See United States v. Crowley*, 318 F.3d 401, 408 (2d Cir. 2003).

Robertson next challenges the jury instructions on three grounds. First, he argues that the district court committed reversible error by defining "knowingly" in Instruction No. 10. We generally review challenges to jury instructions for abuse of discretion, *United States v. Rush-Richardson*, 574 F.3d 906, 910 (8th Cir. 2009), but our review is for plain error where, as here, the defendant failed to object to the offending instruction at trial, *see United States v. Gianakos*, 415 F.3d 912, 921 (8th Cir. 2005).

A person commits aggravated sexual abuse if he "knowingly causes another person to engage in a sexual act—by using force against that other person." 18 U.S.C. § 2241(a)(1). In this case, Count I charged Robertson with *attempted* aggravated sexual abuse, which is a specific intent crime. *Cf. United States v. Kenyon* (*Kenyon II*), 481 F.3d 1054, 1070 (8th Cir. 2007) (holding that "attempted sexual abuse is a specific intent crime"). "[U]nder its usual definition, specific intent is '[t]he intent to accomplish the precise criminal act that one is later charged with.'" *Cherichel v. Holder*, 591 F.3d 1002, 1012 (8th Cir. 2010) (second alteration in original) (quoting Black's Law Dictionary 882 (9th ed. 2009)), *petition for cert. filed*, 78 U.S.L.W. 3629 (U.S. Apr. 12, 2010) (No. 09-1235). "In contrast, general intent is [the] 'intent to perform an act even though the actor does not desire the consequences that result[,]' and often 'takes the form of recklessness . . . or negligence.'" *Id.* at 1013 (second alteration in original) (quoting Black's Law Dictionary, *supra*, at 882). Under the Model Penal Code, "a person who causes a particular result is said to act purposefully if he consciously desires that result, whatever the likelihood of that result happening from his conduct, while he is said to act knowingly if he is aware that that result is practically certain to follow from his conduct, whatever his desire may be as to that result." *United States v. Dougherty*, 763 F.2d 970, 974 n.8 (8th Cir. 1985) (internal quotation marks omitted) (quoting *United States v. Bailey*, 444 U.S. 394, 404 (1980)). Thus, in contemporary legal parlance, "'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent." *Bailey*, 444 U.S. at 405.

-13-

Although the crime of attempted aggravated sexual abuse requires proof that the defendant specifically intended to engage in a sexual act with the victim by the use of force, the indictment in this case included the term, "knowingly," which connotes general intent. Thus, Count I alleged that Robertson "did knowingly attempt to cause [F.S.], a juvenile, to engage in a sexual act . . . by the use of force against her." Instruction No. 10, "KNOWINGLY," informed the jury that "[a]n act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident." According to Robertson, this instruction permitted the jury to convict him "on an incorrect and lesser" mens rea standard. In reviewing this claim, we do not examine Instruction No. 10 in isolation; we must instead determine "whether the instructions *as a whole* accurately and adequately state[d] the relevant law," *see United States v. Lewis*, 593 F.3d 765, 771 (8th Cir. 2010) (emphasis added) (quoting *United States v. Stymiest*, 581 F.3d 759, 763 (8th Cir. 2009), *cert. denied*, 559 U.S. ---, 2010 WL 891331 (Apr. 5, 2010)), *petition for cert. filed*, --- U.S.L.W. --- (U.S. Apr. 27, 2010) (No. 09-10476).

Instruction No. 19, "ATTEMPT - DEFINED," informed the jury that Robertson "may be found guilty of an attempt if he intended to engage in a sexual act . . . and voluntarily and intentionally carried out some act which was a substantial step toward that sexual act." This instruction accurately described the mens rea standard of specific intent for an attempt crime. *See Wahlstrom*, 588 F.3d at 543. We reject Robertson's argument that the definition of "knowingly" in Instruction No. 10 allowed the jury to apply a "lesser" mens rea standard. Unlike Instruction No. 19, which listed the elements of the crime in conjunction with the definition of "attempt," Instruction No. 10 merely defined "knowingly," a term that turned out to be superfluous. Instruction No. 10 did not suggest that Robertson could be found guilty if he was merely "aware of the act[s]" he committed. Nor did it undermine the clear statement in Instruction No. 19 that the crime of attempt requires specific intent to commit the substantive offense—here, aggravated sexual abuse. "It is axiomatic 'that jurors are presumed to follow the court's instructions.'" *United States v. Wisecarver*, 598 F.3d

-14-

982, 989 (8th Cir. 2010) (quoting *United States v. Espinosa*, 585 F.3d 418, 429 (8th Cir. 2009)). Because nothing in the instructions permitted the jury to disregard the mens rea standard of specific intent described in Instruction No. 19, we conclude that the instructions, taken as a whole, accurately and adequately stated the relevant law with respect to the mens rea standard.

Robertson next argues that Jury Instruction No. 19 constructively amended the indictment because it did not require the jury to find that Robertson intended to use force against F.S. "A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner—often through the evidence presented at trial or the jury instructions—that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment." *United States v. Whirlwind Soldier*, 499 F.3d 862, 870 (8th Cir. 2007). "In reviewing an appeal based on a claim of constructive amendment, we consider whether . . . the jury instructions created a 'substantial likelihood' that the defendant was convicted of an uncharged offense." *Id.* (quoting *United States v. Novak*, 217 F.3d 566, 575 (8th Cir. 2000)).

Instruction No. 19 informed the jury that "[a] person may be found guilty of an attempt if he intended to engage in a sexual act, that is, cause contact between his penis and the vulva of [F.S.] and voluntarily and intentionally carried out some act which was a substantial step toward that sexual act." Viewed in isolation, this instruction is troublesome because it fails to mention the element of force. Again, however, we must determine whether the instructions *as a whole* accurately and adequately stated the relevant law. *Lewis*, 593 F.3d at 771.

In this instance, the jury instructions as a whole adequately informed the jury that it could find Robertson guilty on Count I only if it concluded that he attempted to engage in a sexual act with F.S. by force. Instruction No. 14, "AGGRAVATED SEXUAL ABUSE - ESSENTIAL ELEMENTS," unambiguously stated that in order

-15-

to return a guilty verdict, the jury had to find beyond a reasonable doubt that Robertson "attempted to engage in a sexual act with [F.S.], that is, contact between the penis and the vulva of [F.S.] *by the use of force against her*." (Emphasis added.) Additionally, Instructions No. 11 and No. 19 informed the jury that Count I charged Robertson with attempted aggravated sexual abuse of F.S. by the "use of force." And Instruction No. 16 defined "force" to include "the use of physical force sufficient to overcome, restrain, or injure a person; or a threat of harm sufficient to coerce or compel submission by the victim." The instructions, taken as a whole, leave no doubt that force was a required element of the crime.

Significantly, the record indicates that the jury actually deliberated about the issue of force. The jury posed a single question to the district court during deliberations: "In Jury Instruction number 16, force defined, we are questioning if such force can be implied force or if it must be an actual physical motion or verbal statement." *Cf. United States v. Vu Anh Le*, 512 F.3d 128, 133 (5th Cir. 2007) (considering a question posed by the jury in determining whether the jury was confused by supplemental instructions). This question shows that the jury did not ignore the element of force; the jury plainly understood that finding force was a necessary prerequisite for returning a guilty verdict. In light of the jury's question, as well as the accuracy of the instructions as a whole, we conclude that there was no "substantial likelihood" that the defendant was convicted of an uncharged offense. We therefore reject Robertson's argument that Instruction No. 19 constructively amended the indictment.

In his final challenge to the jury instructions, Robertson argues that the district court abused its discretion in denying his request for an intoxication instruction. *See United States v. McCourt*, 468 F.3d 1088, 1093-94 (8th Cir. 2006) ("We review for an abuse of discretion the district court's refusal to give a specifically worded theory-of-defense instruction."). "A defendant charged with a specific intent crime is entitled to an intoxication instruction when 'the evidence would support a finding that [the

defendant] was in fact intoxicated and that as a result there was a reasonable doubt that he lacked specific intent.'" *Kenyon II*, 481 F.3d at 1070 (alteration in original) (quoting *United States v. Fay*, 668 F.2d 375, 378 (8th Cir. 1981)).  In other words, an intoxication instruction "is required if there is 'some evidence' [the defendant] 'was drunk enough to completely lack the capacity to form the requisite intent.'"  *Id.* (alteration in original) (quoting *United States v. Nacotee*, 159 F.3d 1073, 1076 (7th Cir. 1998)).  However, "mere evidence that the defendant had been drinking is not enough to show that the district court abused its discretion in declining to give the instruction." *Id.* (citing *United States v. Phelps*, 168 F.3d 1048, 1056 (8th Cir. 1999)).  Thus, we have held that "[a]n intoxication instruction should not be given if it lacks evidentiary support or is based on mere speculation." *Phelps*, 168 F.3d at 1056 (citing *United States v. Lavallie*, 666 F.2d 1217, 1219 (8th Cir. 1981)).

Based on the evidence presented at trial, it would be speculative to conclude that Robertson was so intoxicated on the day of the alleged offense that he lacked the capacity to form the specific intent to engage in a sexual act with F.S. by force.  Grant Cavanaugh testified that he and Robertson were "drinking some beers" in the morning, that they went on "a beer run" with F.S. before driving to Smith's ranch, and that he and Robertson drank beer with F.S. on the bus for an "hour or two."  F.S. agreed that she was on the bus with Robertson and Cavanaugh for approximately two hours and that "everybody was drinking."  But the record is devoid of evidence about how much alcohol Robertson consumed, and there is no indication in the record that Robertson was even moderately intoxicated, much less that he lost the capacity to form the requisite intent to engage in a sexual act with F.S. by force.  Accordingly, the district court did not abuse its discretion in denying the proposed instruction.

We now turn to Robertson's claim that he was prejudiced by the improper admission of several hearsay statements.  Because Robertson did not object to any of these statements at trial, we review their admission into evidence for plain error.  *See United States v. Hyles*, 521 F.3d 946, 959 (8th Cir. 2008), *cert. denied*, 555 U.S. ---,

-17-

129 S. Ct. 941 (2009). On plain error review, we reverse "only if the error prejudices the substantial rights of a party and would result in a miscarriage of justice if left uncorrected." *United States v. Spencer*, 592 F.3d 866, 880 (8th Cir. 2010) (quoting *United States v. Waldman*, 310 F.3d 1074, 1078 (8th Cir. 2002)).

Robertson first challenges three statements the Government elicited from F.S.'s mother, Rayone. Rayone testified that when F.S. came into the house crying, followed closely by Robertson, F.S. said, "Mom, he done something to me." F.S. then allegedly turned to Robertson and demanded, "Tell her what you did to me." And after Robertson left, F.S. allegedly told Rayone, "He raped me." The Government does not dispute that these out-of-court statements were improperly admitted hearsay but maintains that the testimony was not prejudicial because it was cumulative of F.S.'s testimony. *See United States v. Londondio*, 420 F.3d 777, 789 (8th Cir. 2005) ("The admission of hearsay evidence that is cumulative of earlier trial testimony by the declarant . . . is not likely to influence the jury and is therefore harmless error.").

As to the first two statements, the Government is clearly correct that they were cumulative. F.S. testified that as soon as she came in the door of her mother's house she started "crying and yelling and telling [her] mom what had happened." F.S. then testified that she looked at Robertson and screamed, "Galen, tell her what you did." Rayone's testimony merely reiterated F.S.'s own testimony about making such statements. In light of the strength of the other evidence of Robertson's guilt, we conclude that the admission of these cumulative statements was harmless error, *see United States v. Gettel*, 474 F.3d 1081, 1090 (8th Cir. 2007), and, *a fortiori*, not prejudicial, *see United States v. Gomez*, 580 F.3d 94, 103 (2d Cir. 2009); *see also United States v. Hollingsworth*, 257 F.3d 871, 877 n.9 (8th Cir. 2001), *overruled on other grounds by United States v. Diaz*, 296 F.3d 680, 684-85 (8th Cir. 2002) (en banc).

The third statement is more troublesome because F.S. did not testify that Robertson raped her. At trial, F.S. testified that Robertson forcibly removed her belt, pulled down her pants and underwear, and repeatedly pushed against her on the bed while she kicked and screamed. F.S. did not, however, testify that Robertson penetrated her vulva during the struggle, nor could she say whether he removed any of his clothes during the assault. Robertson is thus correct that Rayone's testimony that F.S. said, "He raped me," was not cumulative of F.S.'s testimony and was improperly admitted. It does not necessarily follow, however, that the admission of this statement rises to the level of plain error. Although F.S. did not testify that Robertson raped her, her testimony described at least an attempted sexual assault. Moreover, the record is replete with evidence that F.S.'s encounter with Robertson at the back of the bus was not consensual. F.S. returned home crying hysterically, and she challenged Robertson to tell Rayone "what [he] did." Robertson behaved nervously and acknowledged to Rayone that he might get into trouble for what he had done. After Robertson left, Rayone noticed that F.S.'s pants had been ripped. Photographs taken a few days later at the police station revealed bruises and scratches on F.S.'s inner thighs. In light of the strength of the Government's evidence that Robertson attempted to engage in a sexual act with F.S. by force, we are convinced that the erroneous admission of F.S.'s alleged statement, "He raped me," did not prejudice Robertson's substantial rights. *See Spencer*, 592 F.3d at 880; *see also United States v. Nutall*, 180 F.3d 182, 189 (5th Cir. 1999).

Robertson next challenges portions of Littlewind's testimony, also on hearsay grounds. First, Littlewind testified that Rayone told him that "she had something to tell me . . . and [that] cops were going to be involved." Robertson theorizes that this testimony improperly "vouched" for Rayone's testimony that F.S. said, "He raped me," and that it bolstered F.S.'s credibility by suggesting that Robertson had sexually assaulted F.S. As an initial matter, we doubt that this statement was hearsay. *See Londondio*, 420 F.3d at 788-89 (concluding that statements "offered to show the reason for police action, rather than to prove the truth of the matter asserted" are not

-19-

hearsay); *see also United States v. Running Horse*, 175 F.3d 635, 638 (8th Cir. 1999) ("Preliminary information concerning the origin of an investigation, admitted only for that purpose, is not hearsay."). Even assuming that this statement was hearsay, it did not prejudice Robertson's substantial rights. The jury had already heard that Rayone called Littlewind to report what she learned from F.S. In testifying that Rayone called him, Littlewind did not express an opinion about whether Rayone had testified truthfully or whether F.S. had been raped; his testimony merely confirmed that Rayone reported that something had happened to F.S. requiring police investigation. This testimony added little, if anything, to the evidence of Robertson's guilt. Thus, even if the district court erred in admitting this testimony, we conclude that the error was not prejudicial, *see Nutall*, 180 F.3d at 189.

Littlewind further testified that F.S. refused to go to the hospital and said, "I am not going outside," after she learned that Robertson was in the neighbor's yard. Robertson argues that this too was prejudicial hearsay. Again, we disagree. Littlewind's testimony about F.S.'s reaction to the news that Robertson was outside simply reiterated F.S.'s testimony about her fear of encountering Robertson: "I was scared to leave my house, to go out because Galen was next door." We have held that "[w]here the evidence is at most 'an extra helping of what the jury had heard before,' the evidence is merely cumulative and its admission does not result in reversible error." *United States v. Ramos-Caraballo*, 375 F.3d 797, 803 (8th Cir. 2004) (quoting *United States v. Simonelli*, 237 F.3d 19, 29 (1st Cir. 2001)). Because the Government presented ample evidence of Robertson's guilt apart from this statement, we conclude that, even assuming the challenged statement was hearsay, Robertson has failed to demonstrate prejudice. *See id.* at 804.

Robertson also argues that Officer Belgarde's testimony contained improper hearsay. Officer Belgarde testified that when he arrived at Rayone's house to investigate, he asked Rayone "why she thought her daughter had been raped or what led up to this point." Even assuming this statement was hearsay, we conclude that

-20-

admitting it into evidence did not prejudice Robertson's substantial rights. Officer Belgarde's testimony merely suggested that he attempted to learn the basis of Rayone's report that her daughter had been raped—it did not imply that Officer Belgarde had reached the conclusion that F.S. had been raped. Here again, this testimony added little, if anything, to the evidence of Robertson's guilt. Surely it would come as no surprise to the jury to learn that Officer Belgarde, in response to a reported sexual assault, asked the person who reported the crime to explain the basis for her report. We conclude that the admission of this testimony was not prejudicial.

In sum, Robertson has not met his burden of showing that any improperly admitted hearsay statements prejudiced his substantial rights, *see Spencer*, 592 F.3d at 880, nor has he established that the admission of these statements "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings," *see Puckett*, 129 S. Ct. at 1429 (quoting *Olano*, 507 U.S. at 736). Accordingly, plain error relief is not warranted.[6]

Robertson also challenges the district court's decision to grant the Government a continuance of the trial date. "A 'district court has broad discretion in deciding whether to grant a continuance,' and we review that decision for abuse of discretion." *United States v. Johnson*, 535 F.3d 892, 898 (8th Cir. 2008) (quoting *United States v. Banks*, 494 F.3d 681, 686 (8th Cir. 2007)).

On September 25, 2008, the Government disclosed a three-page FBI lab report identifying Robertson as the source of DNA found in a sample of semen taken from the underwear F.S. was wearing on the day of the assault. Because the trial was set for October 14, 2008, Robertson moved to exclude the DNA evidence. The

---

[6]Robertson challenges four other "statements" on hearsay grounds. Because the statements he identifies were not out-of-court statements "offered in evidence to prove the truth of the matter asserted," we conclude that they were not hearsay. *See* Fed. R. Evid. 801(c).

Government admitted that it had received the lab report weeks earlier and claimed that its failure to disclose the report to the defense was an oversight. The Government asked the district court to continue the trial to give Robertson time to retain an expert to analyze the evidence. Following an evidentiary hearing, the district court granted a three-week continuance. Robertson argues that this decision was an abuse of discretion.

As an initial matter, Robertson argues that district courts are prohibited by statute from granting continuances based on the Government's mistake. *See* 18 U.S.C. § 3161(h)(7)(C) ("[N]o continuance under subparagraph (A) of this paragraph shall be granted because of . . . lack of diligent preparation . . . on the part of the attorney for the Government."). This argument lacks merit. Section 3161(h) sets out "periods of delay [which] shall be excluded" from the seventy-day speedy trial clock. *See* 18 U.S.C. § 3161(c)(1). Subparagraph (A) then states that the district court may grant a continuance, and exclude the time from the speedy trial clock, if "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," 18 U.S.C. § 3161(h)(7)(A). The limitation described in § 3161(h)(7)(C) applies only to "continuance[s] under subparagraph (A)." Read in context, § 3161(h)(7)(C) does not absolutely prohibit the district court from granting a continuance based on a prosecutor's lack of diligent preparation—it simply prohibits the district court from relying on § 3161(h)(7)(A) to exclude any delay caused by such "lack of diligent preparation" from the speedy trial clock. Here, Robertson has not raised a claim based on the Speedy Trial Act, so his reliance on § 3161(h)(7)(C) is misplaced.

Robertson also argues that the district court abused its discretion in continuing the trial date because it failed to consider all relevant factors. *See United States v. Ware*, 890 F.2d 1008, 1010 (8th Cir. 1989) (noting that courts should consider the "time required and already permitted for trial preparation, diligence of the moving party, conduct of the other party, the effect of delay, and the reasons movant gives for

needing a continuance"). We presume that "trial judges know the law and . . . apply it in making their decisions." *See Walton v. Arizona*, 497 U.S. 639, 653 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002). During the evidentiary hearing, the district court addressed the Government's culpability for the tardy disclosure, the significance of the DNA evidence, and the number of days remaining on the speedy trial clock. Although the district court did not specifically discuss all five of the factors identified in *Ware* in announcing its decision, we conclude that, under the circumstances, the district court adequately considered the issue and did not abuse its "substantial discretion" in continuing the trial date. *See United States v. Tauil-Hernandez*, 88 F.3d 576, 580 (8th Cir. 1996).

Finally, Robertson contends that the cumulative effect of the district court's errors requires us to reverse and remand for a new trial. "We may reverse where the case as a whole presents an image of unfairness that has resulted in the deprivation of a defendant's constitutional rights, even though none of the claimed errors is itself sufficient to require reversal." *United States v. Eizember*, 485 F.3d 400, 405 (8th Cir. 2007) (quoting *United States v. Riddle*, 193 F.3d 995, 998 (8th Cir. 1999)). Here, we are convinced that the cumulative effect of any errors did not result in a miscarriage of justice and that a new trial is therefore unnecessary. *See United States v. Samples*, 456 F.3d 875, 887 (8th Cir. 2006).

## III.    CONCLUSION

For the foregoing reasons, we affirm Robertson's conviction on Count I, reverse Robertson's conviction on Count II, and remand to the district court with instructions to vacate Robertson's conviction and sentence on Count II.

_____