# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1396

_____

United States of America,

           Appellee,

    v.

Randall Frederick Muhlenbruch,

           Appellant.

Appeal from the United States
District Court for the
Southern District of Iowa.

_____

Submitted: September 24, 2010
Filed: February 17, 2011

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BEAM, Circuit Judge.

The district court sentenced defendant Randall Muhlenbruch to two concurrent sentences of 120 months' imprisonment after a jury found him guilty of knowingly receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2), and knowingly possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). On appeal, Muhlenbruch challenges his convictions, arguing that (A) the district court erred when it denied his motions to suppress statements and evidence; (B) the evidence presented at trial was insufficient to support his convictions; (C) the district court erroneously allowed the jury to view Muhlenbruch's videotaped confession multiple times; and (D) his convictions for both possessing and receiving the same images of child

pornography violate the Double Jeopardy Clause.[1] Muhlenbruch also challenges his sentence on several grounds. We affirm in part, reverse in part, and remand with instructions.

## I. BACKGROUND

In late 2004, Muhlenbruch lived with his wife, Tatiana, in an apartment in Marshalltown, Iowa. In November of 2004, however, Tatiana was ordered to have no contact with Muhlenbruch following a domestic dispute in which Tatiana allegedly assaulted Muhlenbruch. Despite the order, the couple resumed cohabitation at Muhlenbruch's apartment sometime in early December of 2004. While Tatiana was staying at the apartment on December 10, 2004, she discovered apparent images of child pornography on Muhlenbruch's computer. When Tatiana confronted Muhlenbruch about the images, Muhlenbruch offered to delete the images but Tatiana convinced him not to. The following day, Muhlenbruch and Tatiana traveled to Des Moines to do some Christmas shopping.

Unbeknownst to Muhlenbruch, Tatiana contacted Jaret Klaas, a private citizen, and asked him to enter Muhlenbruch's apartment and copy the child pornography files from Muhlenbruch's computer onto a CD while Muhlenbruch and Tatiana were in Des Moines. Using a key that Tatiana left under a doormat outside Muhlenbruch's apartment, Klaas entered the apartment, accessed Muhlenbruch's computer, and downloaded what he believed were images of child pornography onto CDs. Klaas then went to the Marshalltown Police Department and reported to Officer Curtis Hansel that Muhlenbruch possessed child pornography on his computer. When Officer Hansel told Klaas that more information was needed before the police could take action, Klaas gave Officer Hansel the CDs containing files from Muhlenbruch's

---

[1]As discussed below, Muhlenbruch's double jeopardy argument appears in his supplemental pro se brief.

computer. Officer Hansel reviewed the images on the CDs and believed, based on his training and experience, that the images constituted child pornography.

Soon after Officer Hansel reviewed the CDs, he began to prepare a search warrant for Muhlenbruch's apartment. Meanwhile, an officer was assigned to conduct surveillance on Muhlenbruch's apartment and to prevent entry while the search warrant was being processed. Muhlenbruch and Tatiana returned to the apartment from Des Moines before the warrant was secured. There, an officer briefly spoke with Tatiana and Muhlenbruch without explaining why law enforcement was present. The officer told Muhlenbruch that he was not under arrest and Muhlenbruch was transported to the police station in the backseat of a patrol car for questioning.[2] At the police station, Muhlenbruch was placed in a hallway near the booking area while officers questioned Tatiana. Tatiana explained to the officers that she found child pornography on Muhlenbruch's computer and directed Klaas to enter Muhlenbruch's apartment to retrieve the images.

After Tatiana's interview, Officer Hansel and Detective Jeremy Linsenmeyer interviewed Muhlenbruch regarding the images found on his computer. A DVD recording of the interview shows that Muhlenbruch was interviewed in a relatively small, windowless room with the door closed for approximately twenty-two minutes. Before the officers began questioning Muhlenbruch, they explained that Muhlenbruch was not under arrest and that he was free to leave at any time. Officer Hansel then told Muhlenbruch that they wanted to ask him about pictures of children found on Muhlenbruch's computer. Muhlenbruch initially denied downloading child pornography on his computer but he admitted to saving adult pornography in a hidden computer folder entitled "AA727." Detective Linsenmeyer stressed to Muhlenbruch the importance of being honest and he explained that Muhlenbruch's denial of

_____

[2]Whether Muhlenbruch was handcuffed when he was placed in the patrol car remains in dispute. It is undisputed, however, that Muhlenbruch was not handcuffed while he was at the police station.

downloading child pornography differed from Tatiana's statement. Shortly after this exchange, Muhlenbruch asked, "I am going to ask you at this point, do I need to bring an attorney in?" Detective Linsenmeyer responded, "That's up to you. I don't tell you one way or the other." Muhlenbruch said, "Okay," and he confessed to downloading child pornography approximately thirty seconds later without making any further references to counsel. This confession occurred approximately seven-and-a-half minutes into the interview. Muhlenbruch then elaborated that he would "never touch a child" but child pornography was like "the forbidden fruit. You ain't supposed to have it, so then you want it."

After Muhlenbruch explained why and how he downloaded child pornography, Officer Hansel reiterated, "Like I told you, Randall, you're going to walk out this door no matter what." Detective Linsenmeyer asked Muhlenbruch whether he would sign a form granting consent to seize Muhlenbruch's computer. Muhlenbruch responded, "I do wonder if I shouldn't have an attorney here to help me on this one." Detective Linsenmeyer again told Muhlenbruch, "This is totally up to you. . . . If you don't want to do it, you don't have to." Officer Hansel added, "[W]e can't tell you one way or the other" and again explained to Muhlenbruch that he was not under arrest and that "no matter what you say, or do, or don't do . . . you're walking out that door." Muhlenbruch then requested to consult a lawyer. Detective Linsenmeyer told Muhlenbruch that they would proceed to prepare a search warrant and that Muhlenbruch would need to remain at the police station until the warrant was secured to prevent Muhlenbruch from destroying or hiding the computer. Muhlenbruch then asked the officers whether his computer would be destroyed during the search. The officers explained that the computer would not be destroyed and Muhlenbruch replied that if he got his computer back, he would consent to the search. Later, Muhlenbruch reiterated, "I'll give you consent because you guys have been more than straightforward with me, and I don't think you're trying to hang me, I really don't." It is undisputed that Muhlenbruch was not advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966) at any point before or during the recorded interview.

-4-

After Muhlenbruch gave consent to seize his computer, Detective Linsenmeyer and Officer Hansel traveled to Muhlenbruch's apartment in a patrol car with Muhlenbruch seated in the front passenger seat. Inside the apartment, Muhlenbruch assisted the officers by unhooking the cables to his computer tower. Officer Hansel seized the computer, placed it in his patrol car, and returned to the police station with Detective Linsenmeyer. Muhlenbruch remained at his apartment and he was not arrested at that time. A warrant to search the computer's hard drive was obtained on January 11, 2005. Officer Hansel's affidavit in support of the warrant application incorrectly stated that Muhlenbruch confessed "under Miranda" that child pornography was on his computer. A subsequent forensic examination of the hard drive revealed apparent images of child pornography.

On June 20, 2007, a grand jury filed an indictment charging Muhlenbruch with both receipt and possession of child pornography. Before trial, Muhlenbruch filed motions to suppress statements made during his recorded interview and evidence obtained during the search of his apartment and his computer's hard drive. The district court denied Muhlenbruch's motions to suppress and a jury later found Muhlenbruch guilty of both receiving and possessing child pornography. The district court then sentenced Muhlenbruch to 120 months' imprisonment and five years' supervised release for each count, to run concurrently. Muhlenbruch appeals.

## II.  DISCUSSION

### A.  Denial Motions to Suppress

Muhlenbruch argues that the district court erred when it denied his motions to suppress his statements and the evidence obtained during the searches of his apartment and computer. When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its conclusions of law de novo. United States v. Aguilera, 625 F.3d 482, 486 (8th Cir. 2010).

-5-

## 1.    Motion to Suppress Statements

Muhlenbruch asserts that the district court should have suppressed inculpatory statements he made during his interview with Officer Hansel and Detective Linsenmeyer because Muhlenbruch was not apprised of his <u>Miranda</u> rights before or during the interview. Specifically, Muhlenbruch challenges the district court's conclusion that <u>Miranda</u> warnings were not required because Muhlenbruch was not "in custody" at the time of the interview. Under the Fifth Amendment, <u>Miranda</u> warnings are required when "interrogation is 'initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" <u>United States v. New</u>, 491 F.3d 369, 373 (8th Cir. 2007) (quoting <u>Miranda</u>, 384 U.S. at 444). We review de novo the district court's legal conclusion that Muhlenbruch was not "in custody" at the time of his interview. <u>Id.</u>

To determine whether a defendant was "in custody" for <u>Miranda</u> purposes, we first consider the "totality of the circumstances" confronting the defendant at the time of the interview, and then we determine "whether a reasonable person in his position would consider his freedom of movement restricted to the degree associated with formal arrest." <u>United States v. Flores-Sandoval</u>, 474 F.3d 1142, 1146 (8th Cir. 2007) (internal quotation omitted). Our focus during this inquiry is on "objective circumstances, not on subjective views of the participants." <u>Id.</u> (quotation omitted). The following non-exclusive factors inform the custody inquiry:

> (1) whether the suspect was informed that he was free to leave and that answering was voluntary; (2) whether the suspect possessed freedom of movement; (3) whether the suspect initiated contact or voluntarily acquiesced; (4) whether strong arm tactics or strategies were employed; (5) whether the atmosphere was police dominated; or, (6) whether the suspect was placed under arrest at the end of questioning.

-6-

Id. at 1146-47.

Here, Muhlenbruch was confronted by police at his apartment and, without knowing the reason for their presence, he accompanied the officers to the police station for questioning. Muhlenbruch was told that he was not under arrest and he was placed in the back seat of a patrol car for a short ride to the police station. At the station, Muhlenbruch was not handcuffed and, at the beginning of the interview, Muhlenbruch was informed that he was not under arrest and that he was free to leave at any time. Muhlenbruch was interviewed by two officers in a small room with the door closed[3] for approximately twenty-two minutes and he confessed to downloading child pornography about seven-and-a-half minutes into the interview. The interviewing officers did not make threats or promises to Muhlenbruch during the interview. At the end of the officers' questioning, Muhlenbruch initially denied consent to seize his computer. The officers explained that Muhlenbruch would need to remain at the police station until they obtained a search warrant to ensure that Muhlenbruch did not hide or destroy the computer. Muhlenbruch eventually consented to the search, acknowledging that the officers had been "more than straightforward" with him. Muhlenbruch was not arrested at the conclusion of the interview and the officers gave him a ride home.

We find the relevant facts of this case virtually indistinguishable from the facts in United States v. Lebrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc), where this court, sitting en banc, determined that the defendant was not "in custody" for Miranda purposes. There, as here, the defendant accompanied officers to the police station in

---

[3]The district court noted in its order denying Muhlenbruch's motion to suppress that "Officer Hansel testified the door to the interview room would have been left ajar." To the extent the district court found that the door to the interview room was left ajar, this finding is clearly erroneous. The DVD recording of the interview clearly shows that the door to the interview room was completely closed during the entire interview.

a patrol car for questioning, the officers told the defendant before questioning that he was not under arrest and that he was free to leave at any time, and the interview took place in a small, windowless room. Id. at 718. In both cases the defendants confessed after a short period of questioning (the defendant in Lebrun confessed after approximately thirty-three minutes whereas Muhlenbruch confessed after a mere seven-and-a-half minutes), and the officers did not shout or physically threaten the defendants to elicit such confessions. Id. Also, the defendants in both cases were not arrested at the conclusion of their interviews and were driven home by the interviewing officers. Id. at 719. In Lebrun, the court reasoned that the circumstances indicating custody were outweighed by the circumstances indicating non-custody, placing significant emphasis on the fact that the defendant was told before his interview that he was not under arrest and that he was free to leave at any time. See id. at 722-23. Indeed, we have long recognized that "[t]he most obvious and effective means of demonstrating that a suspect has not been taken into custody . . . is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will." United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990) (internal quotation omitted).

To be sure, there are some facts in this case not present in Lebrun that weigh in favor of finding custody.[4] Specifically, when Muhlenbruch initially refused consent to search his apartment, the officers told Muhlenbruch that he would need to wait at the police station until they could secure a search warrant. However, this exchange

---

[4]We note that in United States v. Hanson, 237 F.3d 961, 965 (8th Cir. 2001), the panel majority concluded that the defendant was "in custody" at the time of questioning, in part because, similar to Muhlenbruch, federal agents drove the defendant to the federal building in the backseat of a locked government vehicle and interviewed him in a small, windowless room. Although Hanson would have given some support to Muhlenbruch's arguments, the en banc court expressly overruled Hanson in Lebrun, finding that Hanson was inconsistent with the Supreme Court's non-custody determination in Oregon v. Mathiason, 429 U.S. 492 (1997) (per curiam). Lebrun, 363 F.3d at 723.

between Muhlenbruch and the officers took place *after* questioning had ceased and more than twelve minutes *after* Muhlenbruch initially confessed to downloading child pornography. This is significant because "[o]ur main focus must be on the individual's restraint *during the interview*." United States v. Wallace, 323 F.3d 1109, 1113 (8th Cir. 2003) (emphasis in original). We also find that there are facts present in this case that make a finding of non-custody even more compelling than the facts present in Lebrun. Specifically, Muhlenbruch confessed a mere seven-and-a-half minutes into his interview whereas the defendant in Lebrun confessed after thirty-three minutes. We also note that Muhlenbruch was friendly and cooperative during the interview. In fact, on several occasions, Muhlenbruch volunteered information to the officers without a question being posed. See United States v. Axsom, 289 F.3d 496, 502 (8th Cir. 2002) (finding non-custody based, in part, on the fact that the defendant was "extremely friendly and cooperative during the interview").

Based on the totality of the circumstances, we find that Muhlenbruch was not "in custody" at the time of his interview and Miranda warnings were, therefore, not required. Given that Muhlenbruch was not "in custody" at the time of the interview, his right to counsel under the Fifth Amendment is not implicated and we need not address Muhlenbruch's additional argument that the officers denied his allegedly unambiguous request for counsel during the interview. See United States v. Fitterer, 710 F.2d 1328, 1333 (8th Cir. 1983) ("[Defendant] was not in custody . . . and therefore the [F]ifth [A]mendment right to counsel is not implicated.").

Muhlenbruch argues that even if he was not in custody at the time of the interview, the district court should have suppressed his statements because they were involuntary. "A conviction based on an involuntary confession, obtained through police coercion, violates the Due Process Clause." United States v. Carroll, 207 F.3d 465, 472 (8th Cir. 2000). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." Lebrun, 363 F.3d at 724 (quotation omitted). To determine whether a confession is voluntary, we consider the

-9-

totality of the circumstances and "look at the conduct of the officers and the characteristics of the accused." Id. (internal quotation omitted). The government bears the burden of proving the voluntariness of a confession by a preponderance of the evidence. Id.

After considering the totality of the circumstances surrounding Muhlenbruch's interview, we conclude that Muhlenbruch's confession was voluntary. As discussed above, Muhlenbruch was not in custody at the time of his confession, and he was interviewed for a mere twenty-two minutes, albeit at the police station. See id. at 726 ("We place substantial weight on the fact that [the defendant] confessed after a mere thirty-three minutes."). The record reflects that Muhlenbruch is a relatively intelligent individual who was in his late thirties at the time of the interview and had been arrested on at least two prior occasions. See United States v. Gallardo-Marquez, 253 F.3d 1121, 1123 (8th Cir. 2001) (finding confession was voluntary where defendant was of average intelligence and had prior experience with law enforcement). We also note that the officers did not raise their voices or make promises or physical threats. The officers merely emphasized the importance of telling the truth and told Muhlenbruch that he was free to leave at any time.

Muhlenbruch argues that his confession was not voluntary because he was sleep-deprived at the time of the interview and he drank alcohol earlier that day. However, the DVD of the interview reveals that Muhlenbruch was alert and responsive during the interview and there is no indication that Muhlenbruch was intoxicated or otherwise impaired. Muhlenbruch also emphasizes that the officers told him he could not leave the police station until they obtained a search warrant. However, as discussed above, the officers told Muhlenbruch he would need to wait at the police station after he had already confessed and after questioning had ceased. Moreover, the officers explained to Muhlenbruch that they needed him to wait at the station to ensure that Muhlenbruch would not destroy evidence in his apartment. This was certainly not a "threat" used to extract Muhlenbruch's already-obtained confession.

Because Muhlenbruch's statements were voluntarily made in a non-custodial setting, we hold that the district court did not err when it denied Muhlenbruch's motion to suppress the statements.

## 2.    Motion to Suppress Physical Evidence

Next, Muhlenbruch argues that the district court erred in several respects when it denied his motion to suppress physical evidence obtained during the searches of his apartment and his computer's hard drive.  First, Muhlenbruch asserts that Klaas's private search of Muhlenbruch's apartment violated his Fourth Amendment rights and that all evidence stemming from that search should have been suppressed.  We disagree.  "A search by a private citizen is not subject to the strictures of the Fourth Amendment unless that private citizen is acting as a government agent." United States v. Smith, 383 F.3d 700, 705 (8th Cir. 2004).  To determine whether a private citizen is acting as a "government agent," we consider (1) whether the government had knowledge of and acquiesced in the search; (2) whether the citizen intended to assist law enforcement agents or to further his own purposes; and (3) whether the citizen acted at the government's request. Id.  Here, Tatiana, not the government, directed Klaas to enter Muhlenbruch's apartment, and the officers did not know about Klaas's search until after it occurred.  See United States v. Malbrough, 922 F.2d 458, 462 (8th Cir. 1990).  Because Klaas was not acting as a government agent, Muhlenbruch's Fourth Amendment rights were not implicated by Klaas's search.

Next, Muhlenbruch argues that evidence obtained during the search of his apartment–i.e., his computer and the files contained therein–should have been suppressed because he did not voluntarily consent to the search.  The Fourth Amendment prohibition against warrantless entry of a person's home does not apply "to situations in which voluntary consent has been obtained . . . from the individual whose property is searched." Illinois v. Rodriguez, 497 U.S. 177, 181 (1990).  We determine whether consent is "voluntary" based on the totality of the circumstances, and the government "bears the burden of proving voluntary consent by a

-11-

preponderance of the evidence and must show that the defendant behaved in such a manner that the officer reasonably believed that the search was consensual." United States v. Esquivias, 416 F.3d 696, 700 (8th Cir. 2005). Factors relevant to this analysis include:

> (1) the individual's age and mental ability; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of [his] Miranda rights; and (4) whether the individual was aware, through prior experience, of the protections that the legal system provides for suspected criminals. It is also important to consider the environment in which an individual's consent is obtained, including (1) the length of the detention; (2) whether the police used threats, physical intimidation, or punishment to extract consent; (3) whether the police made promises or misrepresentations; (4) whether the individual was in custody or under arrest when consent was given; (5) whether the consent was given in public or in a secluded location; and (6) whether the individual stood by silently or objected to the search.

United States v. Golinveaux, 611 F.3d 956, 959 (8th Cir. 2010) (quotation omitted). "The voluntariness of a consent to search is a factual question that is reviewed for clear error." United States v. Johnson, 619 F.3d 910, 918 (8th Cir. 2010) (quotation omitted).

Based on the totality of the circumstances, we find that the district court did not commit clear error when it found that Muhlenbruch voluntarily consented to the search. As discussed above, Muhlenbruch is a relatively intelligent adult who was in his late thirties at the time of the interview and had been arrested on at least two prior occasions. Although Muhlenbruch consented in a police-dominated atmosphere, he was not in custody, he gave consent after a mere twenty-two minute interview, and there is no indication that he was intoxicated or otherwise inhibited at that time. The officers did not make promises or threats but rather informed Muhlenbruch that giving consent was his choice and they explained to Muhlenbruch that he would not be placed under arrest if he refused to sign the consent form. After Muhlenbruch initially

refused consent and requested to speak to an attorney, the officers explained that they would need Muhlenbruch to remain at the police station until they could obtain a search warrant to ensure that Muhlenbruch did not destroy evidence. This was not a threat but merely a truthful explanation of the process the officers would take to protect evidence. Muhlenbruch gave consent after the officers explained that he would get his computer back and Muhlenbruch acknowledged that the officers had been "more than straightforward" with him. He then rode with the officers to his apartment in the front seat of a patrol car, led the officers to his computer, and even helped unhook the computer to aid in its seizure.

Finally, Muhlenbruch asserts that the district court should have suppressed evidence obtained during the forensic search of his computer's hard drive because the application for the warrant permitting the forensic search included deliberate or reckless falsehoods and omissions and, therefore, violated his Fourth Amendment rights. See Franks v. Delaware, 438 U.S. 154, 155-56 (1978). Muhlenbruch emphasizes that Officer Hansel's application for the warrant erroneously stated that Muhlenbruch confessed "under Miranda" that he had child pornography on his computer, and did not mention Muhlenbruch's references to counsel, the officers' statement that Muhlenbruch would remain at the station until they obtained a search warrant, or the officers' statement that they would be able to seize Muhlenbruch's computer even if he refused consent.

Even assuming that such falsehoods/omissions were deliberately or recklessly included in or excluded from the warrant application, "the Fourth Amendment is not violated if the [application] would still show probable cause after such falsehood[s] or omission[s] [are] redacted or corrected." Technical Ordnance, Inc. v. United States, 244 F.3d 641, 647 (8th Cir. 2001). As discussed above, Muhlenbruch was not entitled to Miranda warnings or the presence of an attorney during his interview, and his confession and consent to search his apartment were voluntary. Thus, even if we reconstructed the warrant application to exclude the falsehoods and include the omissions emphasized by Muhlenbruch, the warrant is still supported by probable

cause based on Muhlenbruch's confession.  Accordingly, Muhlenbruch's Fourth Amendment rights were not violated by the search of his computer's hard drive.

Muhlenbruch has failed to show that the searches in question violated his Fourth Amendment rights and we, therefore, affirm the district court's denial of Muhlenbruch's motion to suppress evidence obtained during the searches.

### B.    Sufficiency of the Evidence

Next, Muhlenbruch argues that there was insufficient evidence to support his convictions for knowingly receiving or possessing child pornography.  He essentially argues that Tatiana and Klaas framed him and that he accidentally confessed to downloading "child pornography" because he mistakenly believed that pornographic images of adults made to look like children constituted "child pornography."  We review the sufficiency of the evidence supporting a conviction de novo, "viewing the evidence most favorably to the verdict, resolving conflicts in favor of the verdict, and giving it the benefit of all reasonable inferences." United States v. Spencer, 592 F.3d 866, 876 (8th Cir. 2010).  We must uphold a jury's verdict if "there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt."  Id. (quotation omitted).

In light of our highly deferential standard of review, we find that there was sufficient evidence introduced at trial to convict Muhlenbruch of knowingly receiving and possessing child pornography.  Specifically, Muhlenbruch admitted to officers in a videotaped interview that he downloaded and saved "hundreds" of pornographic images depicting children of all ages, and explained that he saved all of his pornography in a hidden computer file folder entitled "AA727."  Muhlenbruch further explained that the last time he downloaded child pornography was in late November or early December of 2004. Muhlenbruch's confession was corroborated by a forensic examination of his computer that revealed hundreds of files of child pornography

-14-

saved in a folder entitled "AA727," some of which were downloaded between August and early December of 2004.

### C.    Use of the Videotaped Confession at Trial

Muhlenbruch asserts that the district court erred under Federal Rule of Evidence 403 when it permitted the jury to view Muhlenbruch's videotaped confession multiple times during trial and deliberations.  Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  We review the district court's decision not to exclude evidence under Rule 403 for an abuse of discretion.  United States v. Boesen, 541 F.3d 838, 848 (8th Cir. 2008).

The government played Muhlenbruch's videotaped confession during its case-in-chief, during Muhlenbruch's cross-examination when Muhlenbruch's testimony was inconsistent with his confession, and during the government's closing argument.  The jury then requested to view the video in open court several times during deliberations.  Muhlenbruch contends that allowing the jury to view the video multiple times violated Rule 403 because it placed  "too much evidentiary emphasis and decision-making weight" on the video to the exclusion of other properly admitted evidence.  We disagree.

First, we find that the district court did not abuse its discretion when it permitted the government to play the videotape during its case-in-chief, during Muhlenbruch's cross-examination, and during closing arguments.  As stated above, under Rule 403, the confession's probative value must be *substantially* outweighed by *unfair* prejudice.  "Evidence is not unfairly prejudicial because it tends to prove guilt, but because it tends to encourage the jury to find guilt from improper reasoning.  Whether there was unfair prejudice depends on whether there was an undue tendency to suggest decision on an improper basis." United States v. Farrington, 499 F.3d 854,

859 (8th Cir. 2007) (quotations omitted). Muhlenbruch's videotaped confession was highly probative because it was direct evidence of Muhlenbruch's guilt. Moreover, the confession was used, in part, to impeach Muhlenbruch's testimony that when he confessed to downloading "child pornography" he was merely referring to legal pornographic images of adults made to look like children. As the Supreme Court has recognized, "[i]t is essential . . . to the proper functioning of the adversary system that when a defendant takes the stand, the government be permitted proper and effective cross-examination in an attempt to elicit the truth." United States v. Havens, 446 U.S. 620, 626-27 (1980). While the playing of Muhlenbruch's confession during trial was certainly prejudicial to Muhlenbruch's case, we do not find that the high probative value of the confession was *substantially* outweighed by *unfair* prejudice under Rule 403.

We also find that the district court did not abuse its discretion when it permitted the jury to view the video several times in open court during deliberations. It is within the sound discretion of the trial court to determine whether to allow a jury to review properly admitted testimony or recordings during deliberations. United States v. Haren, 952 F.2d 190, 197 (8th Cir. 1991); United States v. Koessel, 706 F.2d 271, 275 (8th Cir. 1983). Here, the district court permitted the jury to review the videotaped confession because (1) it was properly introduced into evidence, and (2) an unspecified problem with the court's sound system made the confession difficult to hear at trial. As the district court explained to Muhlenbruch's attorney before deliberations, "[I]t's entirely possible that . . . one or more jurors will wish to hear at least segments of [the video] repeatedly to try and grasp specifically what was said." After the first viewing of the confession during deliberations, the record reflects that "for a short period of time during the playback of the interview to the jury, the video portion of the playback was lost. The audio continued." Before the second viewing of the tape, the jury requested a transcript of the confession but counsel for both parties agreed that the request should be denied because a transcript was not in evidence and, in fact, did not exist. Upon the jury's request, the court then permitted the jury to view the video a second time and issued a written response to the jury that

-16-

provided, "You must make your decision on all of the evidence already in the record." See Koessel, 706 F.2d at 275. After the second viewing, the court granted the jury's further requests to view specific portions of the video. Under these circumstances, we cannot say that the district court abused its discretion when it permitted the jury to view Muhlenbruch's confession multiple times during deliberations.

### D.     Double Jeopardy

In addition to the briefing submitted by Muhlenbruch's attorney, Muhlenbruch filed a supplemental pro se brief raising several issues. Although it is "typically not our practice to consider pro se arguments where the defendant is represented by counsel," we granted Muhlenbruch permission to file a pro se brief. United States v. Moore, 481 F.3d 1113, 1114 n.2 (8th Cir. 2007).

Muhlenbruch contends that his convictions and sentences for both receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2), and possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), violate the Double Jeopardy Clause of the Fifth Amendment. Although Muhlenbruch did not raise the double jeopardy issue below, it does not appear that he intentionally relinquished his claim and we will review his claim for plain error. United States v. Robertson, 606 F.3d 943, 949-50 (8th Cir. 2010). To establish plain error, Muhlenbruch must show "(1) an error; (2) that is plain; and (3) that affects substantial rights." United States v. Mireles, 617 F.3d 1009, 1012 (8th Cir. 2010) (quotation omitted). If Muhlenbruch establishes the above three prongs, we may remedy the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Robertson, 606 F.3d at 950 (alteration in original) (quotations omitted).

We must first determine whether Muhlenbruch's convictions violate the Double Jeopardy Clause, which bars the imposition of "[m]ultiple punishments for the same criminal offense." United States v. Roy, 408 F.3d 484, 491 (8th Cir. 2005). To establish a violation of the clause, Muhlenbruch must show that he was convicted of

two offenses that are "in law and fact the same offense." Id. (quotation omitted). If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932).

Muhlenbruch contends that possessing child pornography under § 2252(a)(4)(B) is a lesser-included offense of receiving child pornography under § 2252(a)(2), and thus constitutes the same offense for double jeopardy purposes.[5] This argument is based on the Supreme Court's decision in Ball v. United States, 470 U.S. 856 (1985). There, the Supreme Court applied Blockburger and concluded that Congress did not intend to punish felons for both possessing and receiving the same

---

[5]18 U.S.C. § 2252(a)(2) (2004) provides for the punishment of any person who:

> knowingly receives . . . any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer . . . , if . . . (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct[.]

In comparison, 18 U.S. C. § 2252(a)(4)(B) (2004) provides for the punishment of any person who:

> knowingly possesses 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if . . . (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct[.]

firearm under different statutes because "proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that weapon." Id. at 862.

In United States v. Schales, 546 F.3d 965 (9th Cir. 2008), the Ninth Circuit applied Ball's rationale in the child pornography context and concluded that "[a] comparison of the texts of the receipt offense, § 2252(a)(2), and the possession offense, § 2252(a)(4)(B), reveals that possession is a lesser-included offense of receipt." Id. at 978. Other courts have considered materially similar statutes–18 U.S.C. § 2252A(a)(5)(B) and 18 U.S.C. § 2252A(a)(2)–and have found that possession of child pornography is a lesser included offense of receiving child pornography and that Congress did not intend to impose multiplicitous punishment for these offenses.[6] See United States v. Bobb, 577 F.3d 1366, 1374-75 (11th Cir. 2009), cert. denied, 130 S. Ct. 3322 (2010); United States v. Miller, 527 F.3d 54, 71-72 (3d Cir. 2008); United States v. Davenport, 519 F.3d 940, 943-48 (9th Cir. 2008). We agree with the analysis of our sister circuits and recognize that, as in Ball, proof of receiving child pornography under § 2252(a)(2) necessarily includes proof of illegal possession of child pornography under § 2252(a)(4)(B), and Congress did not intend to impose multiplicitous punishment for these offenses.

Having found that § 2252(a)(4)(B) is the lesser-included offense of § 2252(a)(2), we must now determine whether Muhlenbruch's convictions were based on the "same act or transaction." Blockburger, 284 U.S. at 304. At oral argument on appeal, the government expressly conceded that Muhlenbruch's convictions were based on the same facts and images and made no attempt to challenge Muhlenbruch's assertion that his convictions violate the Double Jeopardy Clause. Accordingly, we

---

[6]As the Third Circuit explained in United States v. Miller, 527 F.3d 54, 64 n.10 (3d Cir. 2008), "[t]he jurisprudence concerning the receipt and possession provisions of 18 U.S.C. § 2252 and the comparable provisions of 18 U.S.C. § 2252A often converges" and "[t]hese statutory provisions have been characterized as materially identical." (quotation omitted).

find that Muhlenbruch's convictions were based on the same conduct and that his convictions for both possession and receipt violate the Double Jeopardy Clause. See Schales, 546 F.3d at 980 (finding a double jeopardy violation where defendant was convicted of both possessing (§ 2252(a)(4)(B)) and receiving (§ 2252(a)(2)) child pornography and "[n]othing . . . indicate[d] that [defendant] was charged with, or prosecuted for, different conduct").

Next, we must determine whether the court's error in entering judgment against Muhlenbruch on both convictions was "plain." Although this case presents an issue of first impression in our circuit, we find that Muhlenbruch's convictions violate the Double Jeopardy Clause primarily "on the basis of the Supreme Court's holding in Ball, which is well entrenched in our law and clear in its implications with respect to the double jeopardy question in this case." Miller, 527 F.3d at 73. Therefore, we find that the district court's error was plain. Id.; Schales, 546 F.3d at 980; Davenport, 519 F.3d at 947.

Although Muhlenbruch's sentences for both convictions were to run concurrently, we also find that the double jeopardy violation affected Muhlenbruch's "substantial rights." As the Court in Ball explained, "[t]he second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored." 470 U.S. at 864-65 (emphasis in original). We also note that the district court imposed a mandatory $100 special assessment for each offense. See 18 U.S.C. § 3013(a)(2)(A). "In light of the double jeopardy violation, the additional $100 special assessment subjects [Muhlenbruch] to multiple punishments for the same offense." Robertson, 606 F.3d at 952.

Thus, we find that Muhlenbruch has established the first three prongs of plain error review. We further conclude that "because the prohibition against double jeopardy is a cornerstone of our system of constitutional criminal procedure, this error

-20-

threatens the fairness, integrity, and public reputation of our judicial proceedings." Davenport, 519 F.3d at 947-48. Therefore, we exercise our discretion under plain error review and, following Ball, we find it appropriate to permit "the [d]istrict [c]ourt, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions" and to resentence Muhlenbruch.[7] Ball, 470 U.S. at 864. We have reviewed the remaining arguments raised in Muhlenbruch's pro se brief and we find them to be without merit.

## III. CONCLUSION

We affirm in part, reverse in part, and remand with instructions for the district court to vacate one of Muhlenbruch's convictions and to resentence Muhlenbruch.

_____

[7]Because the double jeopardy violation requires resentencing, we do not address Muhlenbruch's sentencing challenges.

-21-