# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-1393

_____

United States of America,                  *
                                            *
            Appellee,                       *
                                            *   Appeal from the United States
      v.                                    *   District Court for the
                                            *   Northern District of Iowa.
Hugo Adalberto Castillo-Martinez            *
                                            *        [UNPUBLISHED]
            Appellant.                      *
                                            *

_____

Submitted: October 21, 2011
    Filed: February 9, 2012

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Defendant Hugo Adalberto Castillo-Martinez (Castillo) conditionally pleaded guilty to use and possession of a fraudulent identity document (a permanent resident or "green" card), in violation of 18 U.S.C. § 1546(a). Castillo appeals the district

court's[1] denial of his motion to suppress statements and physical evidence. We affirm.

## I.    BACKGROUND

On August 9, 2010, ICE Agents Fischels and Lund, accompanied by local deputies, attempted to locate a fugitive in an apartment complex in Waterloo, Iowa. Agent Lund and the deputies gained access to a first-floor apartment while Agent Fischels remained in the hallway. Agent Fischels asked residents across the hall whether they knew the fugitive. While talking to the residents, Agent Fischels noticed Castillo and two others in a nearby stairwell. Agent Fischels, still on the ground floor, "motioned for [Castillo] to come [his] way." Castillo drew closer but remained in the stairwell. Agent Fischels, who was dressed in plain clothes but had a visible badge and sidearm on his hip, identified himself as an ICE agent. Agent Fischels then, speaking in Spanish, asked Castillo and his companions whether they recognized the fugitive's name and showed them the fugitive's photograph. Castillo and the others denied knowing anything about the fugitive. According to Agent Fischels, Castillo remained calm and "very cooperative."

After asking questions about the fugitive, Agent Fischels requested to see Castillo's identification. Castillo responded that he did not have any identification on his person, but explained that he had been issued a visa and passport. Castillo also told Agent Fischels that he was from Guatemala. Agent Fischels then asked Castillo the Spanish equivalent of, "[A]re you able to take a seat for me over here [in the hallway]?" Castillo sat down. About five minutes later, Agent Lund exited the first-floor apartment and, at Agent Fischel's request, asked Castillo about his visa. Agent

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, adopting the report and recommendation of the Honorable Jon Stuart Scoles, United States Magistrate Judge for the Northern District of Iowa.

Lund spoke in English, which Castillo appeared to understand. Castillo told Agent Lund that his visa and passport were in his vehicle, which was parked outside. Agent Lund asked Castillo if he could retrieve the documents and Castillo agreed. Upon reaching the vehicle, Castillo opened the door and Agent Lund, with Castillo's permission, retrieved the documents. Agent Lund and Castillo then returned to the apartment complex's first-floor hallway.

After reviewing the documents, Agent Lund discovered that Castillo's work visa had expired. Castillo acknowledged as much and told Agent Lund that he worked for Los Amigos restaurant in Cedar Falls, Iowa. Agent Lund asked Castillo to sit back down in the hallway and Castillo did so. At that point, Agents Lund and Fischels decided to administratively arrest Castillo for overstaying his visa. Castillo was handcuffed and transported to the local sheriff's office. The agents then traveled to Los Amigos restaurant and asked to review Castillo's I-9 (authorization for employment form). The manager said that the documents were kept by an accountant in Cedar Rapids. Agents Lund and Fischels returned to the sheriff's office and then transported Castillo to the ICE office in Cedar Rapids. There, Castillo was asked questions pursuant to "administrative processing" procedures. During such questioning, Castillo reiterated that he worked at Los Amigos restaurant. A representative of Los Amigos later notified Agents Lund and Fischels that Castillo did not have an I-9 form on file, but provided the green card Castillo used to obtain employment. The green card had not been assigned to Castillo and was, apparently, counterfeit. Castillo was never given a Miranda[2] warning during the above events.

After Castillo was charged with use and possession of a fraudulent green card, he filed a motion to suppress statements he made to agents during the August 9 encounter and evidence derived therefrom. The district court denied the motion in part, holding that until his formal arrest, Castillo was not "seized" for Fourth

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

Amendment purposes or "in custody" for <u>Miranda</u> purposes. But, the district court granted the motion in part, suppressing Castillo's identification of his employer during his post-arrest un-Mirandized responses to "administrative processing" questions. That said, the district court denied Castillo's request to suppress the green card–the supposed "fruit" of the suppressed statement–because Castillo had previously identified his employer during consensual, non-custodial conversations with agents and the agents contacted Castillo's employer well before he was subjected to administrative processing. Castillo appeals.

## II.   DISCUSSION

When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its conclusions of law de novo. <u>United States v. Muhlenbruch</u>, 634 F.3d 987, 995 (8th Cir.), <u>cert. denied</u>, 132 S. Ct. 228 (2011).

First, Castillo claims that he was "seized" without reasonable suspicion, in violation of the Fourth Amendment, during his initial encounter with Agent Fischels–that is, when Agent Fischels approached Castillo in the apartment complex, asked him questions about the fugitive, and then asked Castillo for his identification. We disagree. Consensual encounters, including mere police questioning, do not implicate the Fourth Amendment. <u>United States v. Flores-Sandoval</u>, 474 F.3d 1142, 1145 (8th Cir. 2007). But, "[a] consensual encounter becomes a seizure implicating the Fourth Amendment when, considering the totality of the circumstances, the questioning is so intimidating, threatening, or coercive that a reasonable person would not have believed himself free to leave." <u>Id.</u> (internal quotation omitted). Having considered the totality of the circumstances, <u>see</u> <u>id.</u> at 1145-46 (discussing relevant factors), we hold that Castillo's initial encounter with Agent Fischels was consensual and, thus, did not implicate the Fourth Amendment. At the time of the encounter, Agent Fischels was the only officer in the hallway, he never touched

Castillo, he did not use language or a tone of voice indicating that Castillo was compelled to comply, and he did not block Castillo's exit. While Agent Fischels had a sidearm visibly displayed on his hip, "[t]he presence of a holstered firearm . . . is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon." United States v. Drayton, 536 U.S. 194, 205 (2002). And, absent coercion, an officer's mere request for identification does not change a consensual encounter into a seizure implicating the Fourth Amendment. Id. at 201.

Second, Castillo asserts that he was "in custody" for Miranda purposes once Agent Fischels asked him to sit in the hallway. Thus, he avers, all of his subsequent un-Mirandized statements and evidence derived therefrom should be suppressed. We again disagree. To decide whether a defendant is "in custody" for Miranda purposes, we consider the totality of the circumstances to determine "whether a reasonable person in his position would consider his freedom of movement restricted to the degree associated with formal arrest." Muhlenbruch, 634 F.3d at 995 (quotation omitted). Having considered the totality of the circumstances, see id. at 996 (describing relevant factors), we hold that Castillo was not "in custody" for Miranda purposes until he was placed under formal arrest. Castillo was interviewed in the hallway of an apartment complex, not in a police-dominated stationhouse. While there were several law enforcement officers at the scene, four other civilians were also present. And, although Castillo was arrested at the end of the encounter, he was not handcuffed until that time, he remained calm and cooperative, and there is no evidence that officers blocked his exit or used strong-arm tactics.

Castillo emphasizes that Agent Lund testified at the motion hearing that Castillo was not, in fact, free to leave after Castillo acknowledged that he did not have identification on his person. But, there is no evidence that the agents communicated this to Castillo. This is a key distinction because the "in custody" inquiry focuses on "objective circumstances, not on subjective views of the participants." Id. (quotation omitted). Castillo also claims that Agent Fischels

-5-

"directed" him to sit down in the hallway, but Agent Fischels simply asked, "[A]re you able to take a seat for me over here [in the hallway]?" Even assuming this transformed the consensual encounter into a Terry[3] stop, "most Terry stops do not trigger the detainee's Miranda rights" even though "[o]ne is not free to leave a Terry stop until the completion of a reasonably brief investigation." United States v. Pelayo-Ruelas, 345 F.3d 589, 592 (8th Cir. 2003).

Finally, Castillo argues that the district court improperly applied the inevitable discovery doctrine when it denied his motion to suppress the green card obtained from Castillo's employer. Under the inevitable discovery rule, evidence need not be suppressed if the government proves by a preponderance of the evidence: "(1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." United States v. Conner, 127 F.3d 663, 667 (8th Cir. 1997). Here, the agents discovered the identity of Castillo's employer through lawful means well before Castillo was subjected to "administrative processing." And, acting pursuant to such lawfully obtained information, the agents visited the employer and requested to see Castillo's employment papers. In response to this request, the employer later produced the green card at issue. To the extent Castillo's suppressed responses to "administrative processing" questions even contributed to the agents' discovery of the green card,[4] we hold that the inevitable discovery doctrine bars

---

[3]Terry v. Ohio, 392 U.S. 1 (1968). Once Castillo told Agent Fischels that he did not have any identification on his person and that he had been issued a visa, there was reasonable suspicion to support a Terry stop. See 8 U.S.C. § 1304(e) (providing that it is a misdemeanor for an alien, eighteen years or older, to fail to carry his alien registration receipt card or certificate of alien registration).

[4]"The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." Nix v. Williams, 467 U.S. 431, 443 (1984). The independent source and independent discovery doctrines are "closely related." Id.

suppression of the document. <u>See</u> <u>Nix v. Williams</u>, 467 U.S. 431, 443 n.4 (1984) ("The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct.").

## III.    CONCLUSION

We affirm.

_____